IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 26, 2022 Session

**STATE OF TENNESSEE v. CODY W. BALES**

**Appeal from the Criminal Court for Knox County
No. 115086   Steven Wayne Sword, Judge**

_____

**No. E2021-00918-CCA-R3-CD**

_____

Cody W. Bales, Defendant, pled guilty to statutory rape in July of 2019 and received a six-year sentence to be served on supervised probation after the service of 12 months in incarceration.  A probation revocation warrant was issued in April of 2021.  After a hearing, the trial court revoked probation in full, ordering Defendant to serve his sentence in incarceration.  Defendant appeals.  After a review, we determine that the trial court did not abuse its discretion in revoking Defendant's probation.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and J. ROSS DYER, JJ., joined.

Sherif Guindi, Knoxville, Tennessee, for the appellant, Cody W. Bales.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Rachel Lambert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Knox County Grand Jury returned a presentment against Defendant in March of 2019, charging him with statutory rape, statutory rape by an authority figure, and incest after he allegedly had sexual intercourse with his 13-year-old niece.  At the time of the presentment, Defendant was 20 years of age.

The trial court issued an agreed protective order with regard to the confidentiality of the victim's forensic interview and accompanying documents. In April of 2019, Defendant admitted guilt to the charge of statutory rape. The remaining charges were dismissed. The trial court sentenced Defendant as a Range III, persistent offender with 45% release eligibility, to six years. The guilty plea paperwork indicated that Defendant was to "[s]tay away from [the] victim," "[r]egister with Sexual Offender Registry," and "[a]pply for probation." The guilty plea specified "[r]elease from custody upon guilty plea" and ordered Defendant to have a psycho-sexual evaluation.

There is no transcript of the guilty plea hearing in the record on appeal. However, a pre-sentence report was completed which contains a statement from the Knox County District Attorney's Office, explaining the facts that led to the presentment and guilty plea. The statement reads as follows:

> The twenty[-]year[-]old Defendant engaged his thirteen[-]year[-]old niece in a sexual relationship while commonly visiting her residence. As a result of this sexual relationship, the minor victim became pregnant and gave birth to a child. [D]efendant was interviewed and denied having a sexual relationship with the minor victim but did willingly provide a DNA sample. After the child was born, DNA testing confirmed the Defendant is the biological father. All of these events took place in Knox County, Tennessee.

Defendant's Strong-R Assessment resulted in a score of moderate. The trial court entered a judgment form finding Defendant guilty of one count of statutory rape.[1] Defendant was sentenced as a Range III, persistent offender to a sentence of six years in the Department of Correction. The judgment form indicates Defendant was required to serve 12 months in incarceration prior to being released to supervised probation for a period of 6 years. Defendant received jail credit from "3/07/19-04/12/19." The special conditions box stated that the "suspension of Defendant's sentence is conditioned upon" not violating any of the laws of any city, state, or the United States or "being guilty of any misconduct inconsistent with good citizenship." Defendant was ordered to have "no contact whatsoever with any person under the age of 18 . . . including the victim and resulting child." The trial court also ordered Defendant to register as a sex offender.

On April 20, 2021, a violation of probation affidavit and warrant were issued indicating that Defendant violated the following conditions of probation:

---

[1] There are no judgment forms in the record dismissing Counts 1 (statutory rape by an authority figure) and 3 (incest). On remand the trial court should enter judgment forms for these counts, if needed.

Violation of Rule #1: In that the offender failed to obey the law as evidenced by him being charged with residential and work restrictions . . . on 4/19/21.

Violation of Rule #8: In that the offender used illegal drugs as evidenced by hi[s] testing positive for amphetamine, methamphetamine, and marijuana on 3/31/2021 and 4/16/2021.

Violation of Rule #12: In that the offender failed to follow the special conditions of the Court when he had contact with a person under the age of eighteen (18) on 3/29/2021.

At the July 16, 2021 hearing on the revocation, James Paschke testified. At the time of the hearing, Mr. Paschke was the Probation Manager of the Knoxville office of the Tennessee Department of Correction. From December 1, 2020, to April of 2021, however, Mr. Paschke directly supervised Defendant's probation. Mr. Paschke testified that he explained to Defendant that he was "required to follow the probation rules," the "specialized conditions for sex offenders," the sex offender registry laws, and "the special condition[s] imposed by the [c]ourt."

As part of his probation, Defendant signed and initialed a "Specialized Probation Condition for Sex Offenders" form on March 24, 2020. Special condition number five on that form prohibited Defendant from "enter[ing] into contact with any child under the age of 18" as well as "dat[ing], befriend[ing], resid[ing], or unit[ing] with anyone who has children under the age of 18 except if those children are biologically [Defendant's]." Defendant was also required to report all "incidental contact with children to the treatment provider and [his] officer."

Mr. Paschke also reported that Defendant had "issues with compliance with sex offender treatment." To elaborate, Mr. Paschke explained that Defendant was "sanctioned with 90 days of GPS monitoring for failing to attend sex offender treatment." During the course of supervision, Defendant also failed to "abide by conditions that - - regarding mental health referrals." Mr. Paschke instructed Defendant on 15 separate occasions to "seek mental health and safety net services of Helen Ross McNabb[,]" however, Defendant "never completed that referral until right before" the violation.

Mr. Paschke noted that Defendant was enrolled in a job readiness class but never followed through with employment referrals. Defendant also had sanctions for alcohol use and Defendant admitted that he used methamphetamine and marijuana on March 25, 2021, and admitted that he used marijuana and methamphetamine on April 12, 2021. Toxicology reports indicated Defendant was positive for amphetamine, methamphetamine, and marijuana on March 31 and April 16 of 2021.

Mr. Paschke also learned on March 29 that Defendant violated Rule 5 of the Specialized Probation Conditions of Sex Offenders by having contact with a person under the age of 18 after Defendant reported "an altercation between [Defendant's] girlfriend and the minor [with] which he had contact." Mr. Paschke went to the location, a convenience store, where police were already on the scene and had completed their investigation into "an altercation between the minor and [Defendant's] girlfriend, Taylor Gann." Mr. Paschke spoke with the minor and her mother and viewed video surveillance from the convenience store. The video "showed [Defendant] and the minor enter a vehicle at the [convenience store] and leave the parking lot . . . and then later return, and [Defendant] exited the car." There was no one else in the car with them. The minor was born in 2004 and her age was verified by her identification and cross-checked with information from the State database even though the minor's Facebook profile stated that she was born in 1990. The minor was 17 years of age. As a result of the information he received, Mr. Paschke invited the minor and her mother to come to the probation office for an interview. The minor later provided a written statement. The minor, however, did not testify at the probation revocation hearing.

Defendant presented Cassandra Ray as a witness. Ms. Ray testified that she and Defendant both "stayed at the motel off Cherry Street" at the same time. Ms. Ray recognized the minor partially because the minor's mother worked at the motel. Ms. Ray testified that the minor would tell people that she was 18 or 19 years of age, but most everyone knew that she was only 16 or 17.

At the conclusion of the proof, the trial court found that the State met its burden by a preponderance of the evidence that Defendant violated "Rule 1 by engaging in new criminal behavior by violating the rules of the sex offender registry law by being in contact with a child less than 18." The trial court also found that Defendant violated probation on both March 31 and April 16 "when he tested positive for drug use and subsequently admitted use." The trial court noted that methamphetamine, for which Defendant tested positive, is a "zero tolerance offense." The trial court also determined that Defendant violated the special conditions of probation by being in contact with a person under the age of 18. The trial court found that Defendant "knew that she was under 18, regardless of what that Facebook post says" because nearly everyone in the motel "knew this girl was trouble, to stay away from her."

The trial court expressed displeasure with the way Defendant continued to "blame[] these young girls every time he gets in trouble." The trial court pointed to Defendant's psychosexual evaluation, including the finding that Defendant had "high sexual interest in females between the ages of 6 and 12" and "blamed the victim, which was reflective of a low chance at rehabilitation." The trial court "gave [Defendant] a chance" but found that Defendant "continued to engage in similar type of behavior, plus . . . using drugs." The

trial court stated that if drugs were the "only thing" Defendant had done to violate probation, the court would "give him another shot" but determined that Defendant's "continued contact with young girls . . . makes him a danger to the community." As a result, the trial court revoked Defendant's probation and ordered Defendant to commence execution of the balance of his sentence as originally entered.

Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the "evidence that [Defendant] knew that the girl he had contact with was less than 18 years old is simply not sufficient to warrant revocation of his sentence, even under the lower standard of preponderance of the evidence." Defendant insists that the only evidence of the minor's age came from Ms. Ray. She testified that there was a "practice among sex offenders at the motel that they would communicate with each other about the child, to stay away from her and that she was a minor." Ms. Ray added that Defendant was a sex offender who stayed at the motel. In Defendant's words, it was "mere speculation" resulting from a "stretch of the transitive property." Moreover, Defendant complains that there is no evidence that use of methamphetamine is a "zero tolerance violation" and that the only proof of violations were Defendant's "two instances of failed drug screens and admitted [drug] use" for which he should have received "no more than a 15-day sanction." Defendant insists that the trial court abused its discretion. The State disagrees, contending that there was "substantial evidence to support the trial court's determination that multiple violations occurred" including two positive drug screens and a violation of the sex offender registry and that once the trial court found Defendant violated probation, it properly exercised its discretion and determined that full revocation was the proper outcome.

It is well-settled that a trial judge is vested with the discretionary authority to revoke probation if a preponderance of the evidence establishes that a defendant violated the conditions of his or her probation. *See* T.C.A. §§ 40-35-310, -311(e);[2] *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). "The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial judge to make a conscientious and intelligent judgment." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Upon finding that a defendant has violated probation, the trial court may: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence

---

[2] There were multiple changes in the code sections dealing with revocation of probation effective July 1, 2021.

the defendant for remainder of the unexpired term to a sentence of probation.  *See* T.C.A.
§§ 40-35-308(c)(1), (2); -310; -311(e)(1), (2) (2021).

The Tennessee Supreme Court recently issued an opinion attempting to "clarify and bring uniformity to the standards and principles applied by the trial courts and appellate courts in probation revocation proceedings" to resolve confusion about the proper procedure for a trial court to follow before revoking a probationary sentence.  *State v. Dagnan*, 641 S.W.3d 751, 753 (Tenn. 2022).  In *Dagnan*, the court determined that:

> probation revocation is a two-step consideration on the part of the trial court.
> *See* Tenn. Code Ann. §§ 40-35-308, -310, -311.  The first is to determine
> whether to revoke probation, and the second is to determine the appropriate
> consequence upon revocation.  This is not to say that the trial court, having
> conducted a revocation hearing, is then required to hold an additional or
> separate hearing to determine the appropriate consequence.  The trial courts
> are required by statute to hold a revocation hearing.  *Id.* § 40-35-311(b).
> However, there is no such requirement in the statutes or case law for an
> additional hearing before deciding on a consequence, and we decline to
> impose one.  Defendant agrees that requiring a separate hearing solely to
> determine the consequence for violating probation is not necessary and
> would be too great of a burden on the trial courts.  Still, we emphasize that
> these are two distinct discretionary decisions, both of which must be
> reviewed and addressed on appeal.  Simply recognizing that sufficient
> evidence existed to find that a violation occurred does not satisfy this burden.

*Id.* at 757.  Thus, a trial court is required to make two separate decisions: (1) whether to revoke probation; and (2) if probation is revoked, what consequence will apply.  *Id.*  The supreme court went on to explain the standard of review of a decision revoking probation as follows:

> abuse of discretion with a presumption of reasonableness so long as the trial
> court places sufficient findings and the reasons for its decisions as to the
> revocation and the consequence on the record.  It is not necessary for the trial
> court's findings to be particularly lengthy or detailed but only sufficient for
> the appellate court to conduct a meaningful review of the revocation
> decision.  *See* [*State v.*] *Bise*, 380 S.W.3d [682,] 705-06 [(Tenn. 2012)].
> "This serves to promote meaningful appellate review and public confidence
> in the integrity and fairness of our judiciary." [*State v.*] *King*, 432 S.W.3d
> [316,] 322 [(Tenn. 2014)].  When presented with a case in which the trial
> court failed to place its reasoning for a revocation decision on the record, the
> appellate court may conduct a de novo review if the record is sufficiently

developed for the court to do so, or the appellate court may remand the case
to the trial court to make such findings. *See King*, 432 S.W.3d at 327-28.

*Id.* at 759.

Here, after hearing the proof, the trial court recounted the facts giving rise to the violation reports. The trial court pointed to Defendant's two positive drug screens, admitted drug use, and contact with a minor as violations of his probationary sentence. After reviewing the proof, the trial court found that the State proved by a preponderance of the evidence that Defendant had violated his probation. The trial court then noted Defendant "continued to engage in similar type of behavior [that led to the initial charges], plus . . . using drugs." The trial court was displeased that Defendant seemed to continue to put blame on minors for his own actions. The trial court then separately determined that the preponderance of the evidence supported the revocation and then determined that Defendant's probation should be revoked in full. Referring to Defendant as a "danger" to the community, the trial court determined that it would not give him another "shot." As noted in *Dagnan*, "[i]t is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id.* (citing *Bise*, 380 S.W.3d at 705-06).

The trial court did not abuse its discretion. The facts presented indicated that Defendant violated the rules of his probation by being in contact with a minor and using drugs on more than one occasion, supporting a finding by the trial court that Defendant's probation should be revoked. Defendant claims that his drug use is merely a technical violation of his probation, and not subject to revocation. While Tennessee Code Annotated section 40-35-311(d)(2) prohibits a trial judge from revoking probation on the basis of one instance of a technical violation, Defendant admitted to at least two technical violations by failing two drug screens. If Defendant's drug use was not a "zero tolerance violation" it would be subject to a term of incarceration not to exceed 15 days.[3] T.C.A. § 40-35-311(e)(1)(A)(i). However, Defendant also broke the rules of his probation by violating the rules of both the sex offender registry and his probation by having contact with a minor. *See* § T.C.A. 40-35-311. Moreover, Defendant had already been subject to GPS monitoring for failing to abide by the rules of probation and failing to follow up with mental health referrals. In our view, the trial court did not abuse its discretion by revoking Defendant's probation in full. Defendant is not entitled to relief.

---

[3] The meaning of the term "zero tolerance violation" is unclear in the record. At oral argument, both the State and Defendant argued the term but neither could provide the Court with a statutory definition. Nor was a definition for a "zero tolerance violation as defined by the department of correction community supervision sanction matrix" provided. (*See* T.C.A. §40-35-311 (d)(3) and (e)(2) (effective for determinations made after July 1, 2021).

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE